# PEORIA GAS AND ELECTRIC COMPANY v. PEORIA.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 33. Argued October 30, 1905.—Decided January 2, 1906.

A gas company brought an action against a city in Illinois to restrain the enforcement of an ordinance fixing price of gas on the ground that the low price practically amounted to taking property without compensation and that the ordinance impaired contract rights. The case was tried on these questions but they were ignored by the court which decided adversely to the company, although the master had reported that the rates were confiscatory, on the single ground that the company had for a period violated the anti-trust law of Illinois and thereby was not entitled to relief, *held* that:

Although parties making an agreement, unlawful by the anti-trust act of Illinois, may while the agreement is in force be subject to its penalties, whenever they cease to act under the agreement the penalties also cease.

As the case had been tried on one theory and decided on another and injustice had probably resulted, the judgment should be reversed and sent back so that the terms and duration of the alleged agreement may be ascertained and taken into consideration in determining the case.

THIS was a bill filed in the Circuit Court of the United States for the Northern District of Illinois by the Peoria Gas and Electric Company to restrain the enforcement of an ordinance passed by the defendant, fixing the price of gas. A decree was entered in the Circuit Court dismissing the bill, and the case was brought directly here, as involving a constitutional question.

The facts are these: Prior to 1899 for a period of many years, the Peoria Gaslight and Coke Company had manufactured and furnished gas to the city of Peoria and its citizens. The business had been profitable and the stock was valuable. In 1899 the plaintiff company was organized to construct gas works in Peoria, and that city, by ordinance, granted to it a franchise permitting it to construct and operate a gas plant and lay mains along certain streets, etc. It is charged that in order to obtain

this franchise the promoters of the plaintiff company represented that it was to be a Peoria company and enterprise, and that it would furnish gas at a cheaper rate than the old company; that in fact it was a scheme of certain Chicago capitalists, who, as soon as the ordinance was passed and the plant constructed, appeared as owners of substantially the entire stock. After the new company was organized and its plant constructed the two companies became competitors, the competition being so sharp that in the early summer of 1900 the new company lowered its price to 30 cents per thousand cubic feet for both light and fuel gas. On July 31, 1900, after a conference between the managers of the two companies, both raised the rate to $1.15 net for light and 75 cents net for fuel gas, to take effect August 1, 1900. The announcements of this raise in the rates were published in the Peoria papers on the same day, each announcement being in precisely the same language. On September 4, 1900, the city passed an ordinance providing that the maximum price for gas should be 75 cents per thousand cubic feet, and that the gas to be furnished should not be less than eighteen candle power.

On September 18, 1900, the plaintiff filed this bill of complaint, setting forth its organization, the ordinance under which it was given authority to occupy certain streets and that of September 4, 1900; alleged that the latter ordinance was invalid as establishing a rate which was not remunerative and in effect confiscatory, and was thus taking private property for public use without just compensation and depriving the plaintiff of its property without due process of law. The city answered, narrating the circumstances attending the organization of the plaintiff and the passage of the ordinance authorizing it to occupy the streets and supply the city with gas, with the representation made at the time, and claimed an estoppel by reason thereof, showing also the rates which had been the result of competition, the raise in price by the two companies, charged that this was by agreement between the companies, alleged that the ordinance of September 4 was passed in good faith and to

prevent extortion by the companies, and also that the rate fixed was reasonable. While the answer alleged that the fixing of the rates from the first of August was by agreement between the two corporations, it did not, in terms, plead that the agreement was in violation of any particular statute.

By consent a special commissioner was appointed to take the proofs and report the same with his findings and conclusions thereon. He took an enormous amount of testimony, the printed record in this court amounting to 1,780 pages. From it he found and reported that the rate prescribed by the ordinance of September 4 did not furnish compensation, was confiscatory in its effect, and therefore unreasonable. Exceptions were taken by both sides to different portions of his findings and conclusions of law. On a hearing before the Circuit Court the question of the reasonableness of the rates prescribed was ignored, the court found that the increase in rates on August 1, 1900, was the result of an illegal combination between the two gas companies and in violation of the Illinois anti-trust law of 1891, that, therefore, the plaintiff was not entitled to any relief against the ordinance of September 4, and entered a decree dismissing the bill.

The anti-trust act of Illinois, approved June 11, 1891 (Laws, 1891, p. 206), forbids the entering into any "pool, trust, agreement, combination, confederation or understanding . . . to regulate or fix the price of any article of merchandise or commodity," and punishes the same by fine. Sections 5 and 6 are as follows:

"5. Any contract or agreement in violation of any provision of the preceding sections of this act shall be absolutely void.

"6. Any purchaser of any article or commodity from any individual, company or corporation transacting business contrary to any provision of the preceding sections of this act shall not be liable for the price or payment of such article or commodity, and may plead this act as a defense to any suit for such price or payment."

Subsequently and in 1893 another act was passed, which was

held by this court in *Connolly* v. *Sewer Pipe Company,* 184 U. S. 540, to constitute class legislation, and to be void. An amendment in 1897 to the act of 1891 was subject to the same objection. The Supreme Court of Illinois has since held that the act of 1891 was not repealed by the act of 1893 or the amendment of 1897, and is still in force. *The People ex rel.* v. *Butler Street Foundry,* 201 Illinois, 236, 257; *Chicago, Wilmington & Vermilion Coal Co.* v. *The People,* 214 Illinois, 421, 454.

*Mr. E. C. Ritsher,* and *Mr. W. T. Abbott* with whom *Mr. W. T. Irwin* was on the brief, for appellant:

The contract in question was entered into more than a year subsequent to the filing of the bill of complaint in this cause; it existed for a period of but ten months and was terminated more than a year before the court heard the arguments in this cause.

A complainant who comes into court with clean hands cannot by a temporary act of business accommodation, performed more than a year after the pleadings have been settled —and fully completed and abandoned more than a year before the hearing of the cause,—be denied rights guaranteed to it by the Constitution of the United States.

If the contract in question were vicious and pertinent to the issues in the case, the doctrine of *locus pœnitentiœ* would apply. As a benign contract and wholly collateral to the issues, it cannot properly be made an excuse for denying to complainant its constitutional rights.

The illegality of corporate acts cannot be raised collaterally, especially when the action is not one to enforce the illegal agreement, and no rights are predicated upon it. *Rector* v. *Hartford Deposit Co.,* 190 Illinois, 387; *Gas Light Co.* v. *Memphis,* 72 Fed. Rep. 952; *Bridge Co.* v. *Streator,* 105 Fed. Rep. 729; *L. S. & M. S. Ry. Co.* v. *Smith,* 173 U. S. 698; *Gilbert* v. *Am. Surety Co.,* 121 Fed. Rep. 494; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 450; *Macginnis* v. *B. & M. Con. Co.* (Mont.), 75 Pac. Rep. 89; *Kinner* v. *L. S. & M. S. Ry. Co.,* 69 Ohio St.

376; *Planters' Bank* v. *Union Bank*, 16 Wall. 483; *Strait* v.
*Nat. Harrow Co.*, 51 Fed. Rep. 819; *Dennehy* v. *McNulta*, 30
C. C. A. 422; *S. C.*, 86 Fed. Rep. 825; *Wiswall Co.* v. *Scott*,
86 Fed. Rep. 671; *Box and Paper Co.* v. *Robertson*, 99 Fed.
Rep. 985; *Harrison* v. *Glucose Co.*, 116 Fed. Rep. 304.

*A fortiori*, a collateral attack will not be permitted even
under a special statute, if the statute is not pleaded or its
inhibition challenged by the issues in the case, especially
where the remedy given by the statute is cumulative and
differs from or is in addition to that given by the common
law. Moreover, such defense must be set up by plea and not
by answer. *Chicago & Alton Ry. Co.* v. *Dillon*, 123 Illinois,
570; *Haskins* v. *Alcott*, 13 Ohio St. 210; *Denton* v. *Moore's
Administrator*, 2 Tennessee, 168; *Neagle* v. *Kelley*, 146 Illinois,
465; *Chambers* v. *Chambers*, 4 G. & J. (Md.) 438; *Tanning Co.*
v. *Turner*, 14 N. J. Eq. 329; *Curtis* v. *Mastin*, 11 Paige's Ch.
15; *Dyer* v. *Lincoln*, 11 Vermont, 301; 1 Daniel's Ch. Pl. &
Pr., 5th ed., 630; *Farley* v. *Kittson*, 120 U. S. 303, and cases
cited; *Sullivan* v. *Portland &c. R. R.*, 94 U. S. 806; *Dey* v.
*Dunham*, 2 Johnson Ch. (N. Y.) 182; *Crutcher* v. *Trabue* 5,
Dana (Ky.), 82; *Hudson* v. *Hudson's Admr.*, 6 Munford (Va.),
352; *Prince* v. *Heylin*, 1 Atkins, 494.

See also cases in which foreign corporations seeking to re-
cover or protect their property have been met by the defense
that they had violated or failed to comply with the provisions
of some local statute in compliance with which only would
they have the right to do business in such State. *Smith* v.
*Little*, 67 Indiana, 549; *St. L. &c. R. R. Co.* v. *Fire Association*,
60 Arkansas, 325; *Brewery Co.* v. *Ester*, 86 Hun (N. Y.), 22;
*Telephone Co.* v. *Pesauken Township*, 116 Fed. Rep. 910.

Such collateral attack is expressly forbidden in the Federal
courts. *Blodgett* v. *Lanyon Zinc Co.*, 120 Fed. Rep. 893.

A defense must either be technically pleaded or the facts
constituting such defense must be properly alleged and relied
upon on the hearing of the cause in support of such defense.
*Eyre* v. *Potter*, 15 How. 42; *French* v. *Shoemaker*, 14 Wall.

314; *Babbitt* v. *Dotten,* 14 Fed. Rep. 19; *Spies* v. *Chicago &c. R. R. Co.,* 40 Fed. Rep. 34; *Britton* v. *Brewster,* 2 Fed. Rep. 160; *S. C.,* aff'd 4 Fed. Rep. 808; *Price* v. *Berrington,* 15 Jurist, 999; *S. C.,* 7 Eng. L. & Eq. 254; *Wilde* v. *Gibson,* 1 H. L. Cases, 605; *Ferraby* v. *Hobson,* 2 Phillips, 255; *Curson* v. *Belworthy,* 3 H. L. Cases, 742; *Fire Ins. Co.* v. *Kavanaugh,* 1892, A. C. 473; *Harrison* v. *Guest,* 8-H. L. Cases 481; *Hickson* v. *Lombard,* 1 H. L. Cases, 324; *Tillinghast* v. *Champlin,* 4 R. I. 173; *Fisher* v. *Boody,* 1 Curtis, 206; *Dashiell* v. *Grosvenor,* 66 Fed. Rep. 334; *S. C.,* aff'd 162 U. S. 425; *Leighton* v. *Grant,* 20 Minnesota, 345.

Even were it permissible to set up the anti-trust act collaterally, and even though such act had been specifically set forth in the answer, it would not have been a proper defense in this case.

The only possible purpose for which a violation of the statute might be urged would be for the purpose of inflicting upon complainant the criminal penalties of the act or to show that complainant was a criminal under the act.   1 Starr & Curtis, 2d ed., 1252.

If complainant had violated the anti-trust law, or any other criminal statute, such fact would not bar its rights in this suit. *Gilbert* v. *Am. Surety Co.,* 121 Fed. Rep. 494; *Brewery Co.* v. *Breweries Co.,* 121 Fed. Rep. 713; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *Armstrong* v. *Am. Exch. Bank,* 133 U. S. 433; *Planters' Bank* v. *Union Bank,* 16 Wall. 483; *Armstrong* v. *Toler,* 11 Wheat. 258; *Brooks* v. *Martin,* 2 Wall. 70; *Sharp* v. *Taylor,* 2 Phillips' Ch. 801; *McBlain* v. *Gibbs,* 17 How. 232.

When a court of equity is appealed to for relief, it will not go outside of the subject matter of the controversy and make its interference depend upon the conduct of the moving party as to matters in no way affecting the equitable right which he asserts against the defendant or the relief which he demands. Pomeroy's Eq Jur. § 399; *Lewis' Appeal,* 67 Pa. St. 166; *Woodward* v. *Woodward,* 41 N. J. Eq. 224; *Insurance Co.* v.

*Clunie*, 88 Fed. Rep. 160; *Bateman* v. *Fargarson*, 4 Fed. Rep. 32; *Chicago* v. *Union Stockyards Co.*, 164 Illinois, 224; *Trice* v. *Comstock*, 121 Fed. Rep. 620; *Bonsack Machine Co.* v. *Smith*, 70 Fed. Rep. 383; *Mining Co.* v. *Miners Union*, 51 Fed. Rep. 260; *Knapp* v. *Jarvis Adams Co.*, 135 Fed. Rep. 1008; *Yale Gas Stove Co.* v. *Wilcox*, 64 Connecticut, 101; *Delaware Surety Co.* v. *Layton* (Del. 1901), 50 St. Rep. 378; *Deering* v. *Earl of Winchelsea*, 1 Cox Ch. 318; *Barton* v. *Mulvane*, 59 Kansas, 314; *Foster* v. *Winchester*, 92 Alabama, 497; *Wiley* v. *National Wall Paper Co*, 70 Ill. App. 543.

*Mr. Winslow Evans* for appellee:

The Illinois anti-trust law is valid and its constitutionality as it applies to this case has been upheld. The appellant entered into a combination unlawful under the act and the court will not aid it to reap the fruits thereof. *Gibb* v. *Gas Company*, 130 U. S. 396, 412; *Russell* v. *De Grand*, 15 Massachusetts, 35.

*Mr. William D. Guthrie* by leave of the court and on behalf of Darius O. Mills, a party to another pending case involving the question of the power of cities of Illinois to fix the price of gas, submitted a brief contending that such power did not exist under existing statutes.

*Mr. James Hamilton Lewis, Mr. Henry M. Ashton* and *Mr. David K. Tone* by leave of the court and on behalf of the City of Chicago, a party to such other pending action, submitted a brief, in support of such power.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

This case was tried on one theory and decided on another. While that does not always and necessarily constitute error, yet, under the circumstances, as disclosed by the record, we

are of opinion that injustice has probably resulted and that there should be a reversal of the decree and a further examination in the Circuit Court. As stated in the findings of the commissioner, the bill proceeds upon the theory that the ordinance of September 4, 1900, impaired the rights of contract theretofore existing between the parties, that its enforcement would constitute the taking of private property for public use without just compensation, that the penalties prescribed for a violation of the ordinance were exorbitant and not sanctioned by the laws of the State of Illinois, while the answer justified the provisions of the ordinance by the statements and representations made by the stockholders in the company to the city council at the time the plaintiff's franchise was sought, and alleged that the rate therein fixed was reasonable. On these questions the stress of the controversy was rested. The court entirely ignored them and placed its decision on the single ground that the two companies had by agreement attempted to fix their prices, and therefore came within the scope of the Illinois anti-trust law—an act which had not been in terms referred to either in the pleadings or the report of the master.

There was no positive evidence and no finding by the commissioner of an agreement between the two companies, and while from their action an inference might be drawn that they had entered into some agreement in respect to rates on August 1, 1900, neither its terms, scope nor duration were shown. It also appears from the testimony that that rate was continued by the old company only until January 1, 1901, when an even rate of one dollar per thousand was established, and that this latter rate was on September 1, 1901, also established by the new company, the plaintiff herein. Whether this action of the new company in adopting the rate which had been kept in force by the old company since January 1, 1901, was the result of an agreement or an independent act on its part is not shown. It appears further that in October, 1901, the plaintiff entered into a contract with the old company to supply it with gas for the use of its customers and that, the latter company desisting

temporarily from manufacture, this contract continued in force until August 19, 1902, but this was found by the commissioner to have been a purely private business arrangement between the companies and without relation to the charges made by either to its customers. Doubtless it, together with the evidence of changes in holding of stock, tended to show at least a cessation of competition between the two companies, if not of a unity of control or agreement between them.

We shall assume that there was testimony from which the court justly found that the rates announced on August 1 were fixed by an agreement between the two companies. We shall also assume, though without deciding, that while that agreement was in force and the parties were acting under it, neither could recover for the gas that it furnished, nor could this plaintiff question the validity of the ordinance of September 4. But although the stringent provisions of the Illinois anti-trust law may apply to the case of an agreement between two gas companies fixing the price of gas, and even if while the parties are proceeding under it any party receiving gas may avoid payment therefor on that ground, and the city likewise be upheld in an ordinance establishing maximum rates which are not remunerative, yet the making of such an agreement does not subject the companies to a perpetual penalty. Parties making an agreement, unlawful by the anti-trust act, may while the agreement is in force be subject to its penalties, but whenever they cease to act under it the penalties also cease. The punishment adheres to the offense and stops when the offense itself stops. Now it is in evidence that the prices were changed by the old company on the first of January, 1901—five months after the alleged agreement for a uniform rate—and that for months thereafter each company was charging a different rate, but the decree was one of absolute dismissal—an adjudication that the ordinance of September 4 was valid, an adjudication which became *res judicata* for all future litigation, and this in the face of the finding by the commissioner, undisturbed by the court, that the rates established by it are not remunerative.

and thus work a gradual confiscation of the property belonging to the plaintiff.

We think that under the circumstances the decree should be reversed and the case remanded with instructions either to refer it to a commissioner for further findings, with leave to take additional testimony if that be deemed necessary, showing the terms and duration of the alleged agreement between the two companies, and how far it was acted upon by them, or that the court should itself undertake this investigation and make like findings.

The decree of the Circuit Court is

*Reversed.*